UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 14-362 (DWF/SER)

UNITED STATES OF AMERICA,

            Plaintiff,                    **GOVERNMENT'S POSITION**
v.                                            **REGARDING SENTENCING**

PRENTISS ANTHONY CRUMBLE,

            Defendant.

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Bradley M. Endicott, Assistant United States Attorney, submits this Memorandum setting forth the government's sentencing position in the above-captioned case. Due to the nature of the offense and the defendant's violent criminal history, the United States recommends a sentence of 210 months' imprisonment.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

At approximately 1:28 p.m. on October 21, 2014, the St. Paul Police Department responded to a report of shots fired in the neighborhood of Dale Street and Minnehaha Avenue. (PSR ¶ 6). While en route, the responding officers learned that a tan vehicle had crashed into a house, and that two males fled on foot. *Id.* At the crash scene, officers observed apparent bullet holes in the passenger side of the vehicle. *Id.* Inside, officers located an abandoned Kahr Arms .40 caliber handgun and a cellphone. *Id.*

1

Several witnesses from the neighborhood reported witnessing the incident. One witness advised that the vehicles were traveling at a high rate of speed and the occupants appeared to be shooting at each other. PSR ¶ 7. The police recovered several fired casings from the area near the crash scene. PSR ¶ 8. The officers recovered casings for a .40 caliber, .45 caliber, and 9 millimeter casings in the area of the shooting. *Id.*

The St. Paul Police Department obtained and executed a search warrant for the recovered cell phone. PSR ¶ 9. The cellphone contains a video of the defendant inside the car brandishing a Kahr Arms .40 caliber semiautomatic pistol. *Id.*; Plea Agreement and Sentencing Stipulations (Doc. 78) at ¶ 2. The video is time stamped at 1:15 p.m., approximately 13 minutes before the report of shots fired. PSR ¶ 9.

On November 12, 2014, a grand jury returned a one-count Indictment charging the defendant with Felon in Possession of a Firearm (Armed Career Criminal), in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e). PSR ¶ 1. The defendant conditionally pled guilty to the one-count Indictment on October 22, 2015. PSR ¶ 2.

## THE GOVERNMENT'S POSITION ON SENTENCING

In *Gall v. United States,* 552 U.S. 38 (2007), the Supreme Court set forth the appropriate sentencing methodology: the district court calculates the advisory Guidelines range and, after hearing from the parties, considers the 18 U.S.C. § 3553(a) factors to determine an appropriate sentence. 552 U.S. at 49-50; *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional

departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors").

For the reasons stated below, the Government respectfully requests this Court to impose a 210-month sentence based on all the facts and circumstances of this case under 18 U.S.C. § 3553(a), which requires consideration of: "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

*1. The Guidelines Range*

First, the defendant argues that his numerous second and third-degree burglary convictions should not be deemed as predicate violent felonies under the Armed Career Criminal Act (ACCA). The defendant bases his objection on *Johnson v. United States,* 135 U.S. 2551 (2015) and *United States v. Mathis*, 786 F.3d 1068 (8th Cir. 2015), *pet. for cert. granted* (Jan. 19, 2016). The Court should overrule the defendant's objection because *Johnson* has no bearing in this case. The Eighth Circuit has already held that Minnesota third-degree burglary is a violent felony under the ACCA's enumerated crimes clause. *United States v. Sonczalla*, 561 F.3d 842, 846 (2009). Likewise, at least one court in this district has held that Minnesota second-degree burglary is a violent felony under the enumerated crimes clause. *United States v. Westberg*, No. CR 04-84 (MJD/RLE), 2016 WL 953227, at *2 (D. Minn. Mar. 14, 2016). Since these convictions

3

do not fall under the stricken residual clause, *Johnson* has no bearing on the defendant's status as an Armed Career Criminal. *See Johnson*, 135 S. Ct. at 2563 (expressly providing that the decision does not disturb the application of the ACCA to the enumerated offenses or the remainder of the Act's definition of violent felony).

Second, the defendant objects to the Presentence Investigation Report's (PSR) base offense level calculation of 34. The United States does not disagree with U.S. Probation's assessment. However, the government considers itself bound by the plea agreement which calculates a base offense level of 33. According to paragraph 6 of the Plea Agreement, the guideline stipulations are binding on the parties, but do not bind the Court. The government submits that the Total Offense Level should be 30 with a criminal history category of VI. This results in an effective advisory Guidelines range of 168–210 months' imprisonment, with a mandatory minimum of 180 months.

2. *The Nature and Circumstances of the Offense*

The nature and circumstances of the offense call for a sentence at the top-end of the Guidelines range. This is not a case where the defendant merely possessed a firearm. Instead, the defendant exhibited other dangerous behaviors during the course of his firearms possession. According to the PSR, the defendant was involved in a high-speed vehicle altercation in a St. Paul neighborhood. Witnesses reported seeing the defendant's vehicle and another vehicle shooting at each other. After the exchange of gunfire, the defendant's vehicle crashed into a nearby house. After the defendant fled from the crash, officers recovered a Kahr Arms .40 caliber handgun and .40 caliber casings from the area

of the shooting. Before the shooting incident, the defendant created a video of himself brandishing a Kahr Arms .40 caliber handgun.

Unlike the typical felon in possession case, the defendant did not passively possess the firearm. In this instance, the defendant discharged the firearm during another felony offense – a drive-by shooting. While the Government is not seeking the two-level enhancement for the drive-by shooting (PSR ¶ 26), the Court should consider the incident as a probative fact and circumstance of the offense. The Court should also give due consideration to the location of the drive-by shooting incident. The incident took place in a St. Paul neighborhood during the middle of the day. The defendant's overall conduct had the potential to cause untold harm to the passersby and families in that neighborhood. Because the defendant actively employed a firearm, a sentence at the top-end of the guidelines is warranted.

*3. History and Characteristics of Defendant*

The defendant's criminal history should give the Court some serious pause. In the last eight years, the defendant has accrued <u>six</u> violent felony convictions. PSR ¶¶ 37, 44–45, 49–50. These convictions include an assault where the defendant shot two child-victims, and a litany of commercial burglaries.

In 2007, the St. Paul Police Department responded to a report of shots fired in a local neighborhood. PSR ¶ 37. Upon arrival, officers found two children who had been shot (a 5-year-old and a 15-year-old). *Id.* At least two witnesses identified the defendant as the shooter. *Id.* The reports also indicate that the defendant fired four or five rounds

into a crowd of people. *Id.* The defendant pleaded guilty to Second Degree Assault-Dangerous Weapon-Substantial Bodily Harm. *Id.* The defendant ultimately served 36 months imprisonment for this offense. *Id.* That sentence expired on June 11, 2011. *Id.*

Seven months later (February 4, 2012), the defendant was arrested for committing a burglary of a commercial building. PSR ¶ 44. According to the complaint, the defendant and two other accomplices broke into a St. Paul jewelry store and stole $15,000–$20,000 in watches. *Id.* Surveillance video shows the defendant using a large screwdriver to pry open the exterior door. *Id.* Later that afternoon, the police stopped the defendant's getaway vehicle. During a *Mirandized* interview, the defendant admitted to the burglary by saying, "That's me." *Id.* The police later learned that the same burglary crew broke into another St. Paul jewelry store on January 27, 2012. PSR ¶ 45. Ultimately, the defendant was convicted on two counts of Second Degree Burglary and one count of Third Degree Burglary. PSR ¶¶ 44–45.

On May 1, 2013, at 2:25 a.m., the Wright County Sheriff's Office responded to an alarm at the Dairy Queen in Cokato, Minnesota. PSR ¶ 49. The officers observed that the front entry door glass was smashed. *Id.* Video surveillance revealed that four individuals, who were wearing black or grey sweatshirts, burglarized the establishment. *Id.* Twenty-eight minutes later, the Wright County Sheriff's Department responded to another alarm at a liquor store in Waverly, Minnesota. *Id.* Similar to the burglary at the Dairy Queen, the officers found the front entry door glass smashed. Video surveillance depicted the same four individuals who were involved in the Dairy Queen burglary. *Id.* The defendant pleaded guilty to Third Degree Burglary.

6

On May 8, 2013, at 4:17 a.m., the Wright County Sheriff's Department received an alarm call at liquor store in Albertville, Minnesota. The store surveillance video shows a dark SUV driving onto the lot, and three males breaking into the liquor store. A pizza restaurant reported a burglary on that same date. The front entry door glass was smashed and the video surveillance showed three individuals inside the establishment. *Id.* At approximately 5:00 a.m., officers from Rogers, Minnesota, stopped vehicle and identified the defendant and his two accomplices. *Id.* Again, the defendant pleaded guilty to one count of Third Degree Burglary.

Currently, the defendant is pending other burglary charges in Wright and Chisago Counties. PSR ¶¶ 66–68. Significantly, the defendant is pending Third Degree Burglary charges which stem from a liquor store burglary that took place June 24, 2014, in Stacy, Minnesota. *Id.* at ¶ 68. Officers found drops of blood at the crime scene. *Id.* Two of the blood samples match the defendant's DNA profile. *Id.*

In sum, the defendant's criminal resume, recidivism, and continued use of firearms necessitates the need for a serious sentence. This is not the first time that the defendant has discharged a firearm in connection with a crime of violence. The defendant has proven himself unwilling to correct his behavior despite being given numerous chances. To date, the defendant has received rather lenient sentences, including probation, for his past violent felonies. The past sentences have had no effect. The defendant's recidivism has continued. Given the defendants violent, lengthy, and regular criminal history, the Court should impose a sentence at the top-end of the guidelines.

*4. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

To promote respect for the law, the defendant needs a significant sentence for there to be a true consequence to his criminal conduct. A sentence to 210 months' imprisonment is a just sentence in this case.

*5. The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct, and the Need for the Sentence Imposed to Protect the Public from Future Crimes of This Defendant*

A 210-month sentence will serve to deter the defendant and others who may consider engaging in similar acts. But above all, this sentence will serve to keep others safe. The defendant has shown a reckless disregard for those within his firing range. As someone who has <u>repeatedly</u> used firearms in the way people fear most, there is an acute need to protect the public from future crimes by the defendant.

## CONCLUSION

For all the foregoing reasons, the United States respectfully recommends that the Court impose a sentence to 210 months' imprisonment. On balance, such a sentence will serve the needs of sentencing to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant.

Dated: June 17, 2016                                    Respectfully submitted,

                                                     ANDREW M. LUGER
                                                   United States Attorney

                                                 *s/ Bradley M. Endicott*

                                                 BY: BRADLEY M. ENDICOTT
                                                 Assistant U.S. Attorney